# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LYON FINANCIAL SERVICES, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 10 C 1761 ) |
| BELLA MEDICA LASER CENTER, INC., et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant James Berg's (Berg) motion for summary judgment and on Plaintiff Lyon Financial Services, Inc.'s (Lyon) motion for summary judgment. For the reasons stated below, we grant Berg's motion for summary judgment and deny Lyon's motion for summary judgment.

## BACKGROUND

On July 12, 2007, Lyon entered into a Lease Agreement (Lease) with Defendant Bella Medica Laser Center Inc. (Bella) under which Bella leased certain equipment (Equipment). Berg, Defendant Kim Rader, and Defendant Travis Rader

1

allegedly personally guaranteed Bella's obligations under the Lease. Bella allegedly made 25 out of the 72 payments due under the Lease and failed to make the payment due on October 4, 2009. Under the Lease, the failure to make payments is an event that constitutes grounds for a default on the Agreement. Lyon claims that it has demanded payment from Berg, Kim Rader, and Travis Rader, and they have refused to provide the missing payments.

Lyon brought the instant action and includes in the complaint a breach of contract claim brought against Bella (Count I), a breach of guaranty claim brought against Berg (Count II), a breach of guaranty claim brought against Kim Rader (Count III), a breach of guaranty claim brought against Travis Rader (Count IV), replevin claims brought against all Defendants (Count V), and detinue claims brought against all Defendants (Count VI). On May 19, 2010, the court entered default judgment against Bella, Kim Rader, and Travis Rader. On May 28, 2010, Berg filed a motion to dismiss. On July 14, 2010, since Berg sought to have the court consider materials outside of the pleadings, the court converted the motion into a motion for summary judgment. Lyon responded to Berg's motion for summary judgment and filed a motion for summary judgment on its breach of contract claim brought against Berg.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "must--by affidavits or as otherwise provided in [Rule 56]--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Berg contends that on January 1, 2009, he resigned his position with Bella and that subsequently, Bella entered into a re-write of the Lease (Lease Re-write), which materially altered the terms of the Lease and constituted a new agreement. Berg also contends that he does not possess the Equipment and thus it is improper to bring replevin and detinue claims against him regarding the Equipment.

I. Local Rule 56.1

Lyon, in its response to Berg's statement of material facts, repeatedly indicates that it "does not possess sufficient information to either admit or deny the facts contained" in the pertinent paragraph. (R SF Par. 10-21, 26, 28, 32-33). While such a response may be appropriate for an answer to a complaint, it is not a proper response under Local Rule 56.1 for a response to a statement of material facts. An

opposing party is required to either admit or deny facts and, if denying facts the response must include an appropriate citation to the record to support the denial. LR 56.1; *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008)(stating that "a district court has broad discretion to require strict compliance with Local Rule 56.1"). Also, when there is an evasive answer that fails to respond to the facts included in the paragraphs, such facts are deemed to be undisputed. *See Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). Therefore, pursuant to Local Rule 56.1, the facts contained in paragraphs 10-21, 26, 28, and 32-33 of Berg's statement of facts are deemed to be undisputed.

II. Breach of Contract and Breach of Guaranty Claims

Berg moves for summary judgment on the breach of contract and breach of guaranty claims brought against him. Lyon moves for summary judgment on the breach of contract claim brought against Berg.

### A. Relevant State Law

Lyon contends that Minnesota law applies to the instant motion. The guaranty signed by Berg (Guaranty) does indicate specifically that it is governed by Minnesota law. (Guar. Par. 15). Berg contends that the result for the purposes of the instant motions is the same under either Illinois law or Minnesota law, and Lyon also concedes that the pertinent Minnesota and Illinois law is substantively the same. (Ans. SJ 5). While the Guaranty does indicate that Minnesota law is applicable, we agree that there is no substantive difference in the pertinent state laws and that under both Illinois law and Minnesota law, the ruling on the instant motion would remain the same.

### B. Whether Lease Re-Write Released Berg from His Obligations

Berg contends that the Lease Re-write constituted a new agreement, rather than an amendment to the Lease, and that he was released from any guarantor obligations to Lyon when the Lease was terminated. Under Illinois law, a guarantor is discharged from his obligations with the alteration of "the underlying contract" unless "the essentials of the original agreement have not been changed and the performance required of the principal is not materially different from that first contemplated," or where "the guarantor has knowledge of and assents, either

6

expressly or by implication, to such change." *Lawndale Steel Co. v. Appel*, 423 N.E.2d 957, 962 (Ill. App. Ct. 1981). Under Minnesota law, "[i]t is the general rule that a material alteration in the principal contract, made after execution of the guaranty contract and without consent of the guarantor, discharges the guarantor if the alteration adversely affects the guarantor's interests." *Dewey v. Henry's Drive-Ins of Minnesota, Inc.*, 222 N.W.2d 553, 555-56 (Minn. 1974). It is undisputed that Berg resigned from Bella on January 1, 2009. (R SF Par. 19). It is also undisputed that Bella entered into the Lease Re-write on April 2, 2009, and that Berg did not sign the Lease Re-write. (R SF Par. 19, 22-24).

### 1. Material Increase in Risk

Berg contends that the Lease Re-write materially altered the terms of the Lease and subjected him to a material increase in risk. The determination of "'[w]hether a guarantor is exposed to an increase in the risk it originally undertook is a key variable in determining whether there has been a material change in the guaranty agreement.'" *Chicago Exhibitors Corp. v. Jeepers! of Illinois, Inc.*, 876 N.E.2d 129, 136 (Ill. App. Ct. 2007); *see also Loving & Associates, Inc. v. Carothers*, 619 N.W.2d 782, 789 (Minn. App. Ct. 2000)(stating that "Minnesota courts have used an increased-risk analysis in determining whether a material

alteration in the contract between the principal and the creditor discharges a guarantor"). It is undisputed that, although the monthly payments after the Lease Re-write were less than under the Lease, the Lease Re-Write increased payment obligations by at least $14,894.25, which was an 11.3% increase in risk for Berg. (R SF Par. 25). Thus, Berg faced a significant amount of added risk under the terms of the Lease Re-write, and the Lease Re-write clearly represented a material increase in the exposure of liability by Berg. This is not an instance such as the example given in *Roels*, where there was "a mere change in the name of the debtor without a change in legal status . . . ." 608 N.E.2d at 414. The increase in risk to Berg under the Lease Re-write was substantial and material.

     2. Consent to Alteration of Terms

Lyon contends that Berg consented to any future alteration in the terms of the Lease. Under Illinois law, if a guarantor consents "to a change in the contract, he will not be released." *Id.* at 415; *see also Dewey*, 222 N.W.2d at 555-56 (indicating that a guarantor can consent to future changes in his obligations). In interpreting the terms of a guaranty, generally "[t]he rules of construction of contracts apply" and "[t]he function of the court is to effectuate, if ascertainable, the intent of the parties to the contract." *McLean County Bank v. Brokaw*, 519 N.E.2d 453, 456 (Ill. 1988); *see*

8

*also Loving*, 619 N.W.2d at 786 (stating that "[b]ecause a guaranty is a contract, its terms must be understood in their plain and ordinary sense in light of the parties' intentions and the circumstances under which the guaranty was given"). The Guaranty provides that Berg "unconditionally" makes the Guaranty, Berg unconditionally agrees to allow Lyon to "make other arrangements, including compromise or settlement, with [Bella] and [that Berg] will waive all defenses and notice of those changes and will remain responsibility for the payment and obligations of the Agreement." (R SF Par. 14). Based on such language, Lyon contends that Berg consented to an unlimited future risk under the terms of the Guaranty. Such a position is not consistent with the legal maxim in Illinois law that "[c]ourts construe contracts so as to avoid absurd results." *Rubin v. Laser*, 703 N.E.2d 453, 459 (Ill. App. Ct. 1998). Nor is it consistent with Minnesota law, which provides that the "terms of a guarantor's obligation" cannot "be enlarged beyond the fair and natural import of the guaranty's terms." *Loving*, 619 N.W.2d at 786. If, for example, Bella and Lyon agreed, in the absence of Berg, to increase the liability under the Lease to an additional $1 Million, it would not be reasonable to conclude that Berg, when signing the Guaranty for the Lease, had the intention to agree to such an exorbitant future risk. There is no clear language in the Guaranty that indicates that Berg was agreeing to be liable for any future sum.

The Guaranty, in fact, fails to clearly indicate that Berg was agreeing to any increase in risk. It is undisputed that Lyon drafted the Guaranty. (R SF Par. 14). A guarantor is given "the benefit of any doubt which may arise from the language of the contract, and his liability is not to be varied or extended by construction or implication beyond its precise terms." *McLean*, 519 N.E.2d at 456. If the language in a guaranty "is unequivocal, it must be carried out according to its language, . . . but if it is ambiguous or there is a question of the parties' intentions, subsequent acts of the parties may be considered as evidence of their intentions." *Id.*; *see also Exchange Nat. Bank of Chicago v. Bergman*, 505 N.E.2d 1236, 1238 (Ill. App. Ct. 1987)(stating that under Illinois law, "[a] guarantor is given the benefit of any doubt which may arise from the language of the contract; his understanding is strictly construed; his liability may not be varied or extended beyond its precise terms by construction or implication; and he is bound only to the extent and in the matter and under the circumstances pointed out in his obligation"); *American Tobacco Co. v. Chalfen*, 108 N.W.2d 702, 704 (Minn. 1961)(stating that a guaranty "must be strictly construed in favor of the guarantor"); *Phoenix Home Life Mut. Ins. Co. v. Anderson*, 1994 WL 614999, at *1 (Minn. App. Ct. 1994)(stating that "[g]uaranty contracts are to be strictly construed in the guarantor's favor").

The Guaranty merely states that Berg agrees that Lyon "may make other

arrangements." (R SF Par. 14). It is true that where "the terms of a guaranty contract are clear and unambiguous, they must be given effect as written." *T.C.T. Bldg. Partnership v. Tandy Corp.*, 751 N.E.2d 135, 140 (Ill. App. Ct. 2001). However, in the instant action, the reference to "other arrangements" in the Guaranty is not a clear and unambiguous indication of consent by Berg to be liable under circumstances such as those presented in the instant action. There is no clear statement in the Guaranty that indicates that Berg agreed to allow Bella and Lyon to materially increase his risk under the Lease. The Guaranty also refers to "arrangements" that include "compromise or settlement." (R SF Par. 14). There is no evidence that the Lease Re-write was a part of any settlement of a claim or debt. The ambiguous language in the Guaranty should be interpreted in a manner that favors Berg, the guarantor. The precise terms in the Guaranty do not include the terms that Lyon seeks to impose on Berg.

Since the Lease Re-Write constituted a new agreement, and not a mere amendment to the Lease, Berg was released from his guarantor obligations upon the termination of the Lease. Berg thus, did not breach his obligations under the Guaranty, since they ended with the formation of the Lease Re-write.

### C. Whether Berg Can be Held Liable Under the Lease

Lyon also requests that, if the court finds Berg not to be liable under the Lease Re-write, the court hold Berg liable for an amount he would have been liable for under the terms of the Lease. However, as explained above, the Lease Re-Write was a new agreement, an agreement Berg never signed and for which Berg never executed a guaranty. *See Lawndale Steel Co.*, 423 N.E.2d at 963 (indicating that a material change in terms in effect creates a new contract and releases the guarantor). While Lyon could have sought to hold Berg liable under the Lease while it was in effect, Lyon chose to negotiate a new agreement with Bella after Berg left Bella. Lyon can only look to the parties that were part of that new agreement for liability. There is no legal basis to hold Berg liable as a guarantor for all of Bella's future dealings simply because Berg had, in the past, signed a guaranty on the Lease while he worked for Bella. Under Illinois and Minnesota law, generally, "extinction of the principal obligation, discharges the obligation of the guarantor." *Marble Emporium, Inc. v. Vuksanovic*, 790 N.E.2d 57, 64 (Ill. App. Ct. 2003)(quoting *Mazur v. Stein*, 41 N.E.2d 979 (Ill. 1942)); *see also Currie State Bank v. Schmitz*, 628 N.W.2d 205, 209 (Minn. App. Ct. 2001)(explaining that in *Clark v. Otto B. Ashbach & Sons, Inc.,* 64 N.W.2d 517, 523 (Minn. 1954), a guarantor was released from any obligation where the parties entered into a new contract). The undisputed facts show that the Lease

Re-write resulted in a new contract and a material increase in the risk to Berg. Thus, Berg is released from his obligations under the Lease.

Lyon cites to *McLean County Bank v. Brokaw*, 519 N.E.2d 453 (Ill. 1988) in support of its position. In *McLean*, parents signed as guarantors for a loan to their son. *Id.* at 409. The bank ultimately loaned the son additional funds which exceeded the amount that the parents agreed to guaranty. *Id.* The court held that the parents were liable for the maximum amount that they guaranteed. *Id.* at 459. The court concluded that the intent of the parties was to set up a guaranty by the parents under which the parents sought to limit the maximum amount that they would be liable. *Id.* 456-57. The court further held that "[i]n the absence of an expressed intention in the contract that the maximum amount of credit specified is to be a limitation on the amount of credit to be extended and an absolute condition of the guarantor's undertaking, the extension of credit beyond that amount does not discharge or release the guarantor of liability on the specified amount." *Id.*

The instant action is distinguishable from *McLean*. In *McLean*, the parties anticipated a "future course of dealing between the Bank and the" son, in which the parents would not have any involvement. *Id.* Specifically, the parties contemplated that "a succession of credits was to be extended, but the [parents] were liable only up to the principal amounts, plus interest, specified in the agreements." *Id.* In the

13

instant action, the evidence indicates that the Guaranty was signed by Berg along with the Lease. The Lease was not a loan document, providing a means for Bella to seek credit or obtain a succession of future loans from Lyon. In addition, Berg, unlike the parents in *McLean*, was not merely an uninvolved third party, signing on as a guarantor to future loans and merely seeking to a set a limit on the amount he would guarantee. To the contrary, Berg signed the Guaranty incident to the Lease, and Lyon and Bella later altered the terms of the Lease in a manner that Lyon admits increased the risk of liability to Berg by 11.3%. (R SF Par. 25). Despite ruling against the guarantors, the court in *McLean* reaffirmed the maxim that "a material change that increases the guarantors' liability, without their consent, may discharge their obligations." *Id.* at 457; *see also Exchange*, 505 N.E.2d at 1238 (holding that a material alteration in a the terms of a guaranty "released" the guarantor from his obligations under the Guaranty)

It is undisputed that Bella did not fail to make its Lease payments until October 2009, ten months after Berg resigned from Bella, and that the payments in October 2009, were owed under the terms of the Lease Re-write, not the Lease. The court in *McLean* did not, as Lyon proposes to do in the instant action, attempt to calculate an amount that would have been owed if a defunct agreement was still in effect. In addition, as explained above, unlike in *McLean*, where there was a

14

guaranty clearly setting forth the guarantors' obligations, the Guaranty signed by Berg included ambiguous language. (R SF Par. 14); *see also, e.g, Exchange*, 505 N.E.2d at 1238 (stating that the guarantor's "understanding is strictly construed"). Therefore, we grant Berg's motion for summary judgment on the breach of contract and breach of guaranty claims brought against Berg and deny Lyon's motion for summary judgment on the breach of contract claim brought against Berg.

III. Replevin and Detinue Claims

Berg contends that the replevin and detinue claims are improperly brought against him since he does not possess the Equipment and never possessed the Equipment after he left Bella. A party can bring a replevin or detinue action to recover possession of chattels that are being wrongfully retained. *See, e.g.*, 735 ILCS 5/19-101; *Mineika v. Union Nat. Bank of Chicago*, 332 N.E.2d 504, 509 (Ill. App. Ct. 1975)(explaining that "[u]nder common law, an action in detinue would lie for the recovery of a chattel or its value if the chattel could not be had"). It is undisputed that Berg did not take the Equipment when he resigned from Bella. (R SF Par. 21). There is no evidence that indicates that Berg currently possesses the Equipment or ever did after he left Bella. Thus, the replevin and detinue claims are improperly brought against Berg. Therefore, we grant Berg's motion for summary

judgment on the replevin and detinue claims.

## CONCLUSION

Based on the foregoing analysis, we grant Berg's motion for summary judgment and deny Lyon's motion for summary judgment.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 16, 2010